## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SUZANNE M. MCMULLEN,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 07-1363** |
| | ) | **Electronically Filed** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social** | ) | |
| **Security, Defendant.** | ) | |

### MEMORANDUM OPINION

### I.    Introduction

Plaintiff Suzanne M. McMullen ("Plaintiff") brings this action pursuant to 42 U.S.C. §

405(g), seeking review of the final determination of the Commissioner of Social Security

("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title

II of the Social Security Act ("Act"). Consistent with the customary practice in the Western

District of Pennsylvania, the parties have filed cross-motions for summary judgment on the

record developed at the administrative proceedings. Doc. Nos. 8 & 10.

After careful consideration of the Commissioner's decision, the memoranda of the

parties, and the medical and testimonial evidence, the Court is convinced that the decision of the

Commissioner is not "supported by substantial evidence" within the meaning of Section 405(g).

Therefore, the Court will deny Plaintiff's motion for summary judgment insofar as it seeks an

award of benefits, grant Plaintiff's motion for summary judgment insofar as it seeks a remand for

further administrative proceedings, deny the Commissioner's motion for summary judgment,

vacate the administrative decision currently under review, and remand the case for further

administrative proceedings.

## II.    Procedural History

Plaintiff applied for DIB on January 28, 2005, alleging disability as of February 15, 2002, due to spondylolesthis and patellar femoral syndrome of both knees. R. 60, 63. Her application was denied by the state agency on June 22, 2005. R. 38. On August 3, 2005, Plaintiff filed a timely request for an administrative hearing. R. 37. On February 15, 2007, a hearing was held in Pittsburgh, Pennsylvania, before Administrative Law Judge Elliott Bunce (the "ALJ"). R. 331-364. Plaintiff, who was represented by counsel, appeared and testified at the hearing. R. 336-356. Karen Krull ("Krull"), an impartial vocational expert, was present for the entire hearing and testified before its conclusion. R. 357-361.

In a decision dated April 26, 2007, the ALJ denied Plaintiff's claim for DIB. R. 14-22. After noting that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, the ALJ determined that she suffered from degenerative disc disease, degenerative joint disease of the knees, and obesity. R. 18. Although these impairments were deemed to be "severe" for purposes of 20 C.F.R. §§ 404.1520(a)(4)(ii) and 404.1520(c), they did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpart P, Appendix 1 (the "Listing of Impairments"). R. 18-19. In accordance with 20 C.F.R. § 404.1545, the ALJ made the following determination regarding Plaintiff's residual functional capacity:

> The claimant has the residual functional capacity to perform work that does not require: exertion above the sedentary level; or more than occasional stooping or kneeling; or any climbing, balancing, crouching, or crawling; or more than simple, routine, repetitive tasks, with one- or two-step instructions; or strict production quotas, defined as the requirement to produce a specified number of units of work in a specified period of time; and that allows the alternating of sitting and standing.

2

R. 19. At the time of the ALJ's decision, Plaintiff was 41 years old, making her a "younger person" under 20 C.F.R. § 404.1563(c). R. 21. She had the equivalent of a high school education. *Id.* Based on the applicable vocational and residual functional capacity assessments, the ALJ concluded that Plaintiff could not return to her past relevant work as a salesperson, delivery driver or pharmacy technician. R. 21, 358. Nevertheless, it was determined that Plaintiff could work as an alarm monitor, a cashier, or a hand packer. R. 22. Krull's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 423(d)(2)(A). R. 359. Hence, Plaintiff was not found to be "disabled" within the meaning of the Act. R. 22. The Appeals Council denied Plaintiff's request for review on September 21, 2007, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. 6. Plaintiff commenced this action against the Commissioner on October 10, 2007, seeking judicial review of the Commissioner's decision. Doc. No. 1. Plaintiff and the Commissioner filed cross-motions for summary judgment on January 22, 2008, and January 28, 2008, respectively. Doc. Nos. 8 & 10. These motions are the subject of this memorandum opinion.

## III. Statement of the Case

In his decision, the ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Act through December 31, 2007.

2.  The claimant has not engaged in substantial gainful activity since February 15, 2002, the alleged onset date (20 CFR 404.1520(b) and 404.1571 et seq.).

3.  The claimant has the following severe impairments: degenerative disc disease, degenerative joint disease of the knees, and obesity (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed in Appendix 1 (20

3

CFR 404.1520(d), 404.1525, 404.1526).

5.    The claimant has the residual functional capacity to perform work that does not require: exertion above the sedentary level; or more than occasional stooping or kneeling; or any climbing, balancing, crouching, or crawling; or more than simple, routine, repetitive tasks, with one- or two-step instructions; or strict production quotas, defined as the requirement to produce a specified number of units of work in a specified period of time; and that allows the alternating of sitting and standing.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.    The claimant was born on June 22, 1965, and was 36 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8.    The claimant has the equivalent of a high-school education and is able to communicate in English (20 CFR 404.1564).

9.    Transferability of job skills is not material to the determination of disability, because using the medical-vocational rules as a framework supports a finding that the claimant is not disabled, whether or not she has transferable job skills (compare rules 201.28 and 201.29; see SSR 82-41; 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform (20 CFR 404.1560(c), 404.1566).

11.    The claimant has not been under a disability, as defined in the Act, from February 15, 2002, through the date of this decision (20 CFR 404.1520(g)).

R. 18-22. Plaintiff argues that the ALJ erred in failing to properly evaluate her migraine

headaches and the opinion of her pain management specialist, Dr. Stephanie Le. Doc. No. 9, pp.

9-14.

## IV.   Standards of Review

Judicial review of the Commissioner's final decisions on disability claims is

provided by statute. 42 U.S.C. §§ 405(g)[1] and 1383(c)(3)[2]. Section 405(g) permits a district court to review transcripts and records upon which a determination of the Commissioner is based. Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a). *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

Substantial Evidence

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v. Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to

---

[1] Section 405(g) provides in pertinent part:

Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .
42 U.S.C. § 405(g).

[2] Section 1383(c)(3) provides in pertinent part:

The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.
42 U.S.C. § 1383(c)(3).

5

determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) *(citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401 (citation omitted). *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Ventura*, 55 F.3d at 901 *(quoting Richardson)*; *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir. 1988).

The United States Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla."*Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *See Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder. *Rutherford*, 399 F.3d at 552. In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of

6

the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

### Five Step Determination Process

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982). Similarly, to qualify for SSI, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir.1999):

> In *step one*, the Commissioner must determine whether the claimant is

7

currently engaging in substantial gainful activity. 20 C .F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.

In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .

If the claimant is unable to resume her former occupation, the evaluation moves to the final *step [five]*. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted). *See also Rutherford*, 399

F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not

currently engaged in gainful employment because she (2) is suffering from a severe impairment

(3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her

lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant

satisfies step 3, she is considered per se disabled. If the claimant instead satisfies step 4, the

burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant

numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to

qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that the claimant suffers from a less severe impairment, he or she will be deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (*citing* 42 U.S.C. § 423 (d)(2)(A)). In order to prove disability under this second method, the plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4). *Stunkard,* 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that he or she is unable to resume his or her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given the plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003); *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777.

### Vocational Expert - Hypothetical Questions

The determination of whether a claimant retains the RFC to perform jobs existing in the workforce at step 5 is frequently based in large measure on testimony provided by the vocational expert. *Rutherford*, 399 F.3d at 553, citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir.

9

1984) (citations omitted). Where a hypothetical question to the VE accurately sets forth all of a claimant's significant impairments and restrictions in activities, physical and mental, as found by the ALJ or as uncontradicted on the medical record, the expert's response as to the existence of jobs in the national economy which the claimant is capable of performing may be considered substantial evidence in support of the ALJ's findings as to the claimant's RFC. *See, e.g., Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002), *citing Podedworny*, 745 F.2d at 218 *and Chrupcala v. Heckler*, 829 F.2d, 1276 (3d Cir. 1987) (leading cases on the use of hypothetical questions to VEs).[3] *See also Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical questions include medical impairments, age, education, work experience and RFC); *Boone*, 353 F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory testimony from a vocational expert.'"). Objections to the adequacy of an ALJ's hypothetical questions to a vocational expert "often boil down to attacks on the RFC assessment itself." *Rutherford*, 399 F.3d at 554 n.8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles ("DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform. *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002); see also *id.* at 126 (The "Social Security Administration has taken administrative notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. §

---

[3]Conversely, because the hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the record "medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Podedworny*, 745 F.2d at 218.

10

416.966(d) (2002)). While an unexplained conflict between a VE's testimony and the relevant DOT job descriptions does not *necessarily* require reversal or remand of an ALJ's determination, the United States Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to do so will necessitate a remand. *Boone*, 353 F.3d at 206.

## Multiple Impairments

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(C), and 20 C.F.R. § § 404.1523, 416.923).

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

11

Even if a claimant's impairment does not meet the criteria specified in the listings, he or she must be found disabled if his or her condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971) . . . ."). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in combination or alone, but must set forth the reasons for his or her decision, and *specifically* explain why he or she found that the claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnoli*, 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes that the medical evidence is inconclusive or unclear as to whether the claimant is unable to return to his or her past employment or perform other substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d 36.

Claimant's Subjective Complaints of Impairments and Pain

An ALJ must do more than simply state factual conclusions. Instead, he or she must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not fully confirmed by objective

12

medical evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir.1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board*, 834 F.2d 62, 65, *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of his or her inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky*. Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. *See* 20 C.F.R. § 404.1529(c). *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

If an ALJ concludes that the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision. *See Cotter*, 642 F.2d at 705. Our Court of Appeals has stated: "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the

13

individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. That is, while "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself.*" *Green,* 749 F.2d at 1070-71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067. Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount the claimant's pain *without contrary medical evidence. Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985); *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present *evidence to refute the claim. See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician; "an ALJ is not free to set his own

14

expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports . . . ." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

### Medical Opinions of Treating Sources

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) . . . ." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional citations omitted). The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

Moreover, the Commissioner/ALJ

> must "explicitly" weigh all relevant, probative and available evidence. . . . [and] must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. . . . The [Commissioner] may properly accept some parts of the medical evidence and reject other parts, but she must *consider* all the evidence and *give some reason for discounting* the evidence she rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli,* 247 F.3d at 42-43

15

(although an ALJ may weigh conflicting medical and other evidence, he or she must give some indication of the evidence that he or she rejects and explain the reasons for discounting the evidence; where an ALJ failed to mention significant contradictory evidence or findings, the Court was left to wonder whether he considered and rejected them, or failed to consider them at all, giving the Court "little choice but to remand for a comprehensive analysis of the evidence consistent with the requirements of the applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him. . . . Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

### Medical Source Opinion of "Disability"

A medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as a statement that the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical] conclusion cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between

(i) medical opinions about the nature and severity of a claimant's impairments, including

symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and

physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for

the Commissioner, such as an opinion that a claimant is "disabled" or "unable to work," on the

other. The latter type of medical opinions are on matters which require dispositive administrative

findings that would direct a determination of disability. *Compare* 20 C.F.R. §404.1527(a-d)

(2002) (consideration and weighing of medical opinions) *with* 20 C.F.R. §404.1527(e) (2002)

(distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case

record," and states the circumstances in which an opinion of a treating source is entitled to

"controlling weight." 20 C.F.R. §404.1527(b), (d) (2002).[4] Medical opinions on matters reserved

---

[4]Subsection (d) states: "How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion." 20 C.F.R. 404.1527(d) (2002). Subsection (d)(2) describes the "treatment relationship," and states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, *we will give it controlling weight.* When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.*

17

for the Commissioner are not entitled to "any special significance," although they must always be considered. 20 C.F.R. §404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-2p, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner,[5] these Social Security Rulings provide that, because an adjudicator is required to evaluate *all* evidence in the record that may bear on the determination or decision of disability, "adjudicators must *always* carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must *never* be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner

20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

[5]SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to his or her past relevant work, and whether an individual is "disabled" under the Act.

18

and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2). *See* note 4, *supra.* Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6).

### State Agency Medical and Psychological Consultants

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(I). See also SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review. 2.

19

Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

## V. Discussion

In support of her motion for summary judgment, Plaintiff makes two arguments. First, she argues that the ALJ erred in failing to properly evaluate the effect that her migraine headaches had on her ability to work. Doc. No. 9, pp. 9-11. Second, she contends that the ALJ erred in failing to properly evaluate the physical capacity assessment made by Dr. Stephanie Le, who was one of her treating physicians. *Id.*, pp. 12-14. The Court will address each of these arguments seriatim.[6]

### A. The ALJ's Evaluation of Plaintiff's Complaints of Migraine Headaches

At the hearing, Plaintiff described her headaches to the ALJ. She testified as follows:

Q.   Okay. And any other areas of the body where you have pain regularly?

A.   I get severe headaches.

Q.   All right. How often do you have those?

A.   I have–I get like two types of headaches where I get severe like migraine headaches.

[6]The record contains evidence that Plaintiff was involuntarily committed to a mental hospital in 1999 pursuant to 50 P.S. § 7302. R. 103-111. She remained hospitalized for only one day. R. 103. Her commitment apparently occurred because she had lacerated her left wrist with a piece of glass while trying to escape from a standoff with police officers. *Id.* The treatment notes from her commitment indicate that she was suffering from adjustment and depressive disorders. R. 103, 106, 110. Where a claimant has both exertional and nonexertional impairments, the Commissioner is required to consider the combined effect of both impairments (or all impairments) in determining his or her residual functional capacity. 42 U.S.C. § 423(d)(2)(B); *Burnam v. Schweiker*, 682 F.2d 456, 458 (3d Cir. 1982). In this case, however, Plaintiff does not contend that she suffers from nonexertional impairments. Any mental impairments that she suffered from were apparently no longer present as of her alleged onset date.

20

Q.     All right.  How often do you get the migraines?

A.     Probably like twice a month and they sometimes last for three, four days at a time.  And I also get headaches in between.  They're, they're just different.  I call them my daily normal headaches.

Q.     All right.  And do you actually have them everyday?

A.     Sometimes everyday for three or four weeks at times and then, then I will get a break in between where I don't have them for a couple of weeks.

R. 340.  She also testified that her medication would help to alleviate her headaches, but that they would frequently recur one day later.  R. 342.  The documentary evidence corroborates Plaintiff's testimony.  According to a treatment note from Dr. Steven Brown, Plaintiff's primary care physician, Plaintiff complained of daily headaches on February 8, 2005.  R. 120.  She indicated that she had been suffering from headaches for years, that they had been bothering her for roughly five days per week, and that they had been accompanied by a pressure sensation.  *Id.* Plaintiff returned to Dr. Brown's office on March 11, 2005, for a follow-up appointment related to her headaches.  R. 287.  Dr. Brown reported that Plaintiff had experienced relief from her headaches after taking a daily 25 mg dose of Topamax, but that she had experienced leg and back pain after titrating up to two doses per day.  *Id.* He stated that she had "been doing fairly well" with "occasional breakthrough headache[s]." *Id.* Generally speaking, her headache problem had improved.  *Id.* A year later, on April 18, 2006, Plaintiff again saw Dr. Brown because of her headaches.  R. 263.  On that occasion, she reported that she had experienced difficulties in tolerating certain headache medications, such as Topamax and Imipromine.  *Id.* Dr. Brown adjusted Plaintiff's medication regimen and instructed her to start keeping a headache diary.  *Id.*

Plaintiff's attorney questioned Plaintiff about her headaches at the hearing.  Plaintiff

21

testified that her headaches typically lasted between three and four days. R. 350. When asked what she was capable of doing while suffering from a headache, Plaintiff responded, "Not much of anything." R. 350-351. She explained that she typically laid down to relieve her headaches, and that she did not leave the house. R. 351-353. Although Plaintiff acknowledged that medications would make her headache "go away for awhile," she stated that she would typically wake up with another headache the next morning. R. 352.

In his opinion, the ALJ did not discuss Plaintiff's headaches at length. Instead, he simply dismissed them with the following sentence: "Claimant testified to debilitating headaches, but the record does not document headaches of the frequency or severity indicated." R. 20. It is not clear to the Court how the ALJ came to the conclusion that the record did not document headaches of the *frequency* indicated in Plaintiff's testimony. On February 8, 2005, Dr. Brown noted that Plaintiff had been experiencing headaches roughly five days per week. R. 120. Her symptoms apparently improved with medication, as she was having only "occasional breakthrough headache[s]" one month later. R. 287. Nevertheless, she returned to Dr. Brown one year later with "chronic daily headaches." R. 263. On that occasion, she indicated that she was having difficulty tolerating her headache medications. *Id.* She was instructed to keep a headache diary. *Id.*

Given the attention paid to her headaches at the hearing, the ALJ's conclusory dismissal of this impairment was inadequate. The United States Court of Appeals for the Third Circuit has expressed concerns about administrative "opinions that fail properly to consider, discuss and weigh relevant medical evidence." *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). Such concerns are particularly present where an administrative opinion is so vague that it effectively

22

precludes meaningful judicial review under § 405(g). *Id.* The Court acknowledges that, in some instances, a particular impairment can be adequately addressed in a single sentence. *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981)("As the opinion for the court makes clear, the ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a *sentence* or short paragraph would probably suffice.")(emphasis added). In this case, however, the only sentence which discusses Plaintiff's headaches is simply untrue. That does not mean, of course, that the ALJ was required to credit Plaintiff's testimony in full. Resolving conflicts in the evidence is the prerogative of the Commissioner. *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985). Nevertheless, the ALJ was not free to summarily disregard Dr. Brown's treatment notes, which clearly corroborated Plaintiff's testimony, without providing an adequate justification for doing so. The deferential nature of the "substantial evidence" standard does not convert judicial review into a rubber stamp. *Hanna v. Chater*, 930 F.Supp. 378, 386 (N.D.Iowa 1996). While the Commissioner may reject evidence for a sufficient reason, he may not reject evidence for the *wrong* reason. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). Where, as here, the only explanation provided for the rejection of a claimant's testimony is an inaccurate characterization of the documentary evidence, it can fairly be said that the Commissioner has rejected the testimonial evidence for the wrong reason. Moreover, the Court is not free to adopt its own *reason* for rejecting evidence. *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 196 (1947)(explaining that if the grounds relied upon by an administrative agency to support a determination are "inadequate or improper," a court is "powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis"); *Fargnoli*, 247 F.3d at 44, n. 7 (applying *Chenery* in a case involving disability benefits under the

Social Security Act). Under these circumstances, the Commissioner's decision cannot stand without further analysis and opinion.

### B. The Weight Given to Dr. Le's Physical Capacity Assessment

Plaintiff also takes issue with the ALJ's rejection of the opinion of her treating physician, Dr. Stephanie Le. On February 26, 2007, Dr. Le completed a medical source statement concerning Plaintiff's ability to do work-related physical activities. R. 317-320. Dr. Le opined that Plaintiff could only stand or walk for two hours in an eight-hour workday, and that she was unable to sit for six hours per day. R. 317-318. The ALJ characterized Dr. Le's assessment of Plaintiff's capacity to be "below the sedentary level." R. 20. Thus, the jobs identified in Krull's testimony would have been precluded had the ALJ adopted Dr. Le's assessment of Plaintiff's physical capacities.

In rejecting Dr. Le's opinion, the ALJ relied on Dr. Le's "examination findings," as well as such findings of Plaintiff's other treating physicians. R. 21. The problem with this analysis is that it fails to explain how the examination findings translated into functional capacities. Although the record contains a residual functional capacity assessment completed by a state agency physician on June 21, 2005, the ALJ did not rely on it in his opinion. R. 199-205. This may be due, in part, to the fact that Plaintiff later had back surgery on January 13, 2006. R. 237-239. The record indicates that this surgery yielded "excellent results." R. 244. Nevertheless, the only physical capacity assessment in the record which postdates Plaintiff's surgery is the one completed by Dr. Le. The Court acknowledges that the ALJ appeared to credit portions of Dr. Le's findings, particularly those gleaned from her treatment notes. R. 21. What is lacking, however, is evidence regarding Plaintiff's functional capacities which contradicts the assessment

provided by Dr. Le. In order to reject the findings of Dr. Le, the ALJ was required to rely on *specific* medical evidence. *Rivera v. Sullivan*, 923 F.2d 964, 968 (2d Cir. 1991). He was not free to disregard Dr. Le's opinion in the *absence* of such contradictory evidence. *Mason v. Shalala*, 994 F.2d 1058, 1066-1067 (3d Cir. 1993).

The Court does not mean to imply that the ALJ was required to accept Dr. Le's assessment in its entirety. The United States Court of Appeals for the Third Circuit has acknowledged that it is the Commissioner's prerogative to discount "internally contradictory evidence." *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991)("In light of such conflicting and internally contradictory evidence, the ALJ correctly determined that the opinions of Jones's treating physicians were not controlling."). In this case, the ALJ appears to have viewed Dr. Le's opinion as contradictory to Dr. Le's own examination findings. R. 21. Such a contradiction may well provide a reasonable basis for rejecting a physician's opinion, but the Court does not understand how the ALJ determined that Dr. Le's examination findings translated into the residual functional capacity assessment ultimately adopted in the opinion. "Residual functional capacity is defined as that which an individual is still able to do despite the *limitations* caused by his or her *impairments.*" *Pearson v. Barnhart*, 380 F.Supp.2d 496, 505 (D.N.J. 2005)(emphasis added). While the treatment notes relied upon by the ALJ may shed some light on the nature of Plaintiff's *impairments*, they do not alone build an adequate bridge to her resulting functional *limitations*.

Although the regulations provide for consultative medical examinations to make such assessments, there is no indication in the record that one was conducted in this case. A consultative examination is sometimes needed where the evidence as a whole, both medical and

nonmedical, is insufficient to support a determination as to disability or nondisability. 20 C.F.R. § 404.1519a(b). In many instances, a consulting physician may bring impartiality and expertise in disability matters that a treating physician lacks. *Smith v. Bowen*, 664 F.Supp. 1165, 1169 (N.D.Ill. 1987). If the ALJ was unpersuaded by Dr. Le's assessment, he could have sought another opinion as to Plaintiff's functional capacities. Having opted not to do so, he was not free to reject Dr. Le's uncontradicted opinion. *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988)("The Secretary cannot reject those medical determinations simply by having the administrative law judge make a different medical judgment. Rather, the medical judgment of a treating physician can be rejected only on the basis of contradictory medical evidence.").

## C. Plaintiff's Daily Activities

The Commissioner argues that his decision should be affirmed because of Plaintiff's ability to do laundry, wash dishes, dust furniture, and vacuum floors. Doc. No. 11, p. 7. The Court notes that the very document relied upon by the Commissioner, a daily activities questionnaire, also includes a statement by Plaintiff that her impairments often make it difficult for her to prepare meals. R. 96. In any event, however, a finding of nondisability cannot be sustained solely on the ground that a claimant is capable of performing light housework. *Swope v. Barnhart*, 436 F.3d 1023, 1026, n. 4 (8th Cir. 2006); *Hogg v. Shalala*, 75 F.3d 366, 369 (8th Cir. 1996). While the ALJ was free to consider whether Plaintiff's daily activities were inconsistent with her complaints of disabling pain, he was not free to reject such complaints *solely* on the basis of nonmedical evidence. *Williams v. Apfel*, 98 F.Supp.2d 625, 633-634 (E.D.Pa. 2000). Consequently, the argument advanced by the Commissioner is without merit.

26

## D. The Appropriate Remedy

In her motion for summary judgment, Plaintiff seeks an award of benefits. The Court is not convinced that such a remedy is proper. A judicially ordered award of benefits is proper only where "the administrative record of the case has been fully developed and . . . substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 222 (3d Cir. 1984). That standard is not met here. First of all, further development of the record is not only possible, but desirable. Although it is the prerogative of the Commissioner to determine how best to proceed, the Court's foregoing discussion illustrates the utility that could be provided by a consultative medical examination. Second, it cannot be said that the evidence in the record as a whole supports an indisputable finding of disability. Indeed, Plaintiff has consistently maintained that she stopped working as a retail salesperson on February 15, 2002 (her alleged onset date) because her employer laid her off. R. 64. The reason for the layoff was her inability to meet her sales quotas. *Id.* At the hearing, Plaintiff testified that several others were laid off as well. R. 349. Thus, the ALJ had good reason to be skeptical of Plaintiff's assertion that she became "disabled" immediately after being laid off. R. 20. The Act provides that a disability determination does not turn on whether a "specific job vacancy" is available for a particular applicant, or whether she would be hired if she were to apply for a job. 42 U.S.C. § 423(d)(2)(A).

The record does contain evidence, however, that Plaintiff's physical condition deteriorated in subsequent years. R. 267. It appears that Plaintiff's injuries can be traced to a gymnastics-related injury that she sustained at the age of 11, and that these injuries continued to get progressively worse as she got older. R. 141. The fact that Plaintiff's condition worsened

after her layoff is buttressed not only by the testimonial and documentary evidence, but also by the ALJ's own determination that Plaintiff was incapable of returning to her past relevant work. R. 21. Whether Plaintiff became statutorily disabled (and, if so, at what point she became statutorily disabled) is subject to dispute. Under these circumstances, the proper remedy is for the Court to remand the case for further administrative proceedings. *Stevens v. Commissioner of Social Security*, 484 F.Supp.2d 662, 668-669 (E.D.Mich. 2007)("When the reason for the rejection of the ALJ's decision is a lack of substantial evidence, and the record indicates that remand to potentially find such evidence would not be futile, remand to the body assigned the role of weighing evidence and making factual determinations is appropriate.").

## VI. Conclusion

Because the Commissioner's residual functional capacity assessment is not "supported by substantial evidence," the Court must vacate his administrative decision and remand this case for further proceedings. A reliable residual functional capacity assessment, of course, must account for all of a claimant's credibly established limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). At the fifth step of the sequential evaluation process, the burden of proof is on the Commissioner, *not* on the claimant. *Allen v. Barnhart*, 417 F.3d 396, 401, n. 2 (3d Cir. 2005). The Commissioner cannot establish that jobs exist in the national economy which Plaintiff can perform without first making a reliable determination as to her residual functional capacity. In making such a determination, the Commissioner must adequately explain the weight given to the opinions expressed by all treating, examining and nonexamining physicians. *Alejandro v. Barnhart*, 291 F.Supp.2d 497, 508 (S.D.Tex. 2003). At a minimum, the Commissioner's discussion of the evidence must be sufficiently detailed to provide a court with

28

an opportunity to conduct meaningful judicial review in accordance with § 405(g). Since that standard was not met in this case at this time, further administrative proceedings are required. An appropriate order will follow.

Arthur J. Schwab
United States District Judge

cc:    All counsel of record

29